IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TILE OUTLET, INC. | § | CASE NO. 05-80340-H3-11 |
| Debtor | § | (Chapter 11) |
| | § | |
| OFFICIAL COMMITTEE OF | § | ADV. NO. _____ |
| UNSECURED CREDITORS | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| JPMORGAN CHASE BANK, NA | § | |
| | § | |
| Defendant | § | |

## COMPLAINT TO AVOID FRAUDULENT TRANSFERS

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Comes now the Plaintiff, the Official Committee of Unsecured Creditors for the above-captioned estate, and files this Complaint and respectfully states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction by virtue of 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

### PARTIES

2. The Plaintiff is the Official Committee of Unsecured Creditors ("Committee") formed in the above-captioned bankruptcy estate. Under the Cash Collateral Order (Docket #89), the Committee is authorized to bring this action.

{L:\til000\00010\0367505.DOC;3\HMR}   1

3.      Bank One, N.A. ("Bank One") is, as a successor through merger, now known as JPMorgan Chase Bank, N.A., an entity licensed to do business in Texas. It may be served under Fed. R. Bankr. P. 7004 by sending a copy of the Summons, Complaint and Scheduling Order to an officer or other person authorized to receive process at its principal place of business by first class mail, postage prepaid.

## FACTUAL BACKGROUND

4.      The Debtor was a profitable and well-known chain of retail flooring centers. It filed for protection under Chapter 11 of the Bankruptcy Code on February 4, 2005.

5.      The Debtor's balance sheet shows it was solvent on June of 2004. In July of 2004, the Debtor's balance sheet shows the liabilities outstrip the Debtor's assets. The Debtor, to the extent not already insolvent and without working capital, became insolvent and unreasonably undercapitalized as the result of a buy-out by a former officer and shareholder, David Tinsley ("Tinsley").

6.      Mr. Tinsley formed Tile Outlet with Mr. Miller. Mr. Miller did not complete high school, while Mr. Tinsley has an extensive education and financial experience. Mr. Miller was in charge of selling tile, while Mr. Tinsley ran the finances of the business. Mr. Miller testified at the meeting of creditors that he never looked at a detailed financial statement.

7.      Mr. Tinsley, in the summer of 2004, suddenly announced to Mr. Miller that he wanted to be "bought out". Mr. Miller and Mr. Tinsley then agreed to an amount of $1.5 million for Mr. Tinsley's 50% ownership of the company. Mr. Miller and Mr. Tinsley did not have the business appraised or conduct a formal analysis of the business' value.

8. Mr. Miller approached Bank One to obtain a loan for him individually, secured by Tile Outlet's assets, to pay Tinsley for the "buy out". Bank One, as a condition to the loan, reviewed the Debtor's financial statements and required the Debtor to sign a guaranty. Moreover, Tinsley and Bank One agreed that, upon funding of the loan, Tinsley would be released from a $250,000 guaranty on the Debtor's revolving line of credit.

9. On July 13, 2004, Bank One loaned $600,000 to Mr. Miller (not the Debtor), and secured this loan by encumbering substantially all of the Debtor's assets ("Bank One Lien"). Bank One knew the money would be used by Mr. Miller to buy out Mr. Tinsley, and that the Debtor would receive no consideration or less than reasonably equivalent value for the encumbrance of all of its assets.

10. The Debtor also guaranteed Mr. Miller's loan on or about June 13, 2005 ("Guaranty"). The Debtor received no consideration or less than reasonably equivalent value for the Guaranty of Mr. Miller's debt. The Debtor did not obtain a disinterested third party opinion on the propriety of the Guaranty.

11. The Bank One Lien, Guaranty and associated loan transaction rendered the Debtor insolvent, and with unreasonably small capital, and with debts that it was unable to pay as they came due.

### Count 1 - Fraudulent Transfer

12. The Bankruptcy Code allows the Trustee (or other person authorized by the Court) to sue to avoid transfers made without reasonably equivalent value under certain circumstances:

(a) (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

* * *

(B)

(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)

(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. §548 (provisions in effect on May 31, 2005).

13. The Guaranty and Bank One Lien were made while the Debtor was insolvent, or they rendered the Debtor insolvent. They occurred when the Debtor had debts beyond its ability to pay and the Debtor intended to incur or believed it would incur such debt. The Bank One Lien and Guaranty were part of a transaction for which any property remaining with the Debtor was an unreasonably small capital. The Debtor did not receive reasonably equivalent value in exchange for the Guaranty or Bank One Lien.

14. Under 11 U.S.C. §550, the Trustee or other person authorized on behalf of the estate may recover avoidable transfers or their value. Under 11 U.S.C. §551, the equity created by, or asset recovered as an avoided transfer, is preserved for the estate.

## Count 2 – Actual Fraud

15.     Under 11 U.S.C. §548(a)(1)(A), transfers (which includes the placing a lien on an asset) made with actual intent to hinder, delay, or defraud creditors may be avoided. The intent of the Transferor (here, the Debtor) is key, not the intent of the transferee.

16.     The Bank One Lien and Guaranty were sought by the only officer of Tile Outlet with a good grasp of the Debtor's finances, and in close proximity to the insolvency and bankruptcy of the company – for the benefit of an insider. The Bank One Lien encumbered the Debtor's assets for little or no value. The Guaranty was also made without reasonably equivalent consideration. Both transfers were made to and for the benefit of an insider. Both transfers rendered the Debtor insolvent and with insufficient capital to do business. Therefore, upon information and belief, the Bank One Lien and Guaranty were made with actual intent to hinder, delay or defraud the creditors of the Debtor by placing the assets of the Debtor in the hands of an insider on the eve of a financial downturn.

17.     The estate may avoid the Guaranty and Bank One Lien by removing the lien on the Debtor's assets and canceling any debt on the Guaranty since it was the result of a transfer from the Debtor with actual intent to hinder, delay and defraud.

## Count 3 – 11 U.S.C. 502(d)

18.     Under 11 U.S.C. §502(d), the court "shall disallow all claims" by creditors who refuse to return property that is avoidable by 11 U.S.C. §§ 548 and 547. Prior to filing suit, the Committee made demand on Bank One. It refused to release either the Bank One Lien or the Guaranty. The Committee therefore asks that the Court disallow all claims of Bank One.

## Conclusion/ Prayer

19.     The Committee requests that the Court find that the Bank One Lien and the Guaranty are avoidable transfers, and that these transfers be avoided for the benefit of the estate, and that the Court award such other relief as is just.

Dated: May 31, 2005.

                    Respectfully submitted,

                    WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By: _____
EDWARD L. ROTHBERG
State Bar No. 17313990, Fed. I.D. No. 2780
HUGH M. RAY, III
State Bar No. 24004246, Fed. I.D. No. 22090
MELISSA A. HASELDEN
State Bar No. 00794778, Fed. I.D. No. 19704.
Eleven Greenway Plaza, Suite 1400
Houston, Texas 77046
Telephone:     713.961.9045
Facsimile        713.961.5341

ATTORNEYS FOR PLAINTIFF/COMMITTEE