IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| TILE OUTLET, INC., | ) | CASE NO. 05-80340-G3-11 |
| | ) | |
| Debtor, | ) | |
| | ) | |
| OFFICIAL COMMITTEE OF | ) | |
| UNSECURED CREDITORS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | ADV. NO. 05-8032 |
| | ) | |
| JPMORGAN CHASE BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>MEMORANDUM OPINION</u>

The court has held a hearing on "JPMorgan Chase Bank f/k/a Bank One, N.A.'s Motion to Dismiss Due to the Committee's Lack of Standing, Failure to State a Claim and Failure to Allege Fraud with Particularity" (Docket No. 5). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered granting in part the motion. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

Tile Outlet, Inc. ("Tile Outlet") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 4, 2005. On February 15, 2005, the Official Committee of Unsecured Creditors ("Committee") was appointed for Tile Outlet. On April 29, 2005, Alan Miller, the sole shareholder of Tile Outlet, filed a voluntary petition under Chapter 11 of the Bankruptcy Code, in Case No. 05-36681-H2-11. By order entered July 13, 2005 (Docket No. 147, Case No. 05-80340-G3-11), the cases of Tile Outlet and Miller were jointly administered.

On the petition date[1], Tile Outlet filed a motion seeking authority to use cash collateral of JPMorgan Chase Bank, N.A. ("Defendant"). In the motion, Tile Outlet asserted that Defendant had loaned it $250,000 on a revolving loan, and $600,000 on a term loan, secured by, inter alia, all of Tile Outlet's cash. The court held a preliminary hearing on the motion for use of cash collateral on February 8, 2005. At the hearing, the parties present (Tile Outlet, Defendant, and the United States Trustee) announced that they had reached an agreement for the Tile Outlet's interim use of Defendant's cash collateral.

The parties submitted a proposed form of order on February 9, 2005, but the court declined to sign the proposed

---

[1] Unless otherwise stated, dates refer to those in the Tile Outlet, Inc. case.

2

form of order, for the reason that the budget attached to the proposed form of order was vague.

Although no written order had been entered authorizing Tile Outlet's interim use of cash collateral, the parties appeared on February 23, 2005, and presented an order extending Tile Outlet's authorized use of Defendant's cash collateral through March 31, 2005. The order (Docket No. 45, Case No. 05-80340-G3-11) set a final hearing on the motion for use of cash collateral for March 21, 2005.

On March 18, 2005, the Committee filed an objection to Tile Outlet's use of Defendant's cash collateral. (Docket No. 64, Case No. 05-80340-G3-11). In the objection, the Committee argued that the proposed form of order should not be approved, because it did not include a carve-out for administrative expenses of the Committee's professionals or the United States Trustee. The objection also states: "The Committee specifically reserves (i) the right to object to any one or more of the provisions of the Cash Collateral Motion or the Interim Order becoming a final order, (ii) the right to raise further objections to the relief requested at the hearing on the Cash Collateral Motion and entry of the Interim Order as a final order, (iii) the right to file a Brief and Memorandum in support of this Objection, and (iv) the right to object to any provision of the Final Order." (Docket No. 64, Case No. 05-80340-G3-11, at

3

p. 4).

At the hearing on March 21, 2005, the parties who appeared (including Tile Outlet, the Committee, Defendant, and several taxing authorities) announced agreement to the terms of a final cash collateral order. The order was entered April 15, 2005. (Docket No. 89, Case No. 05-80340-G3-11).

The cash collateral order provides, in pertinent part:

> Nothing contained herein shall be construed as any admission by the Committee as to the extent, validity, priority or amount of the Bank's lien and the Committee expressly reserves its right to challenge same. Any challenges by any party-in-interest, including the Creditors Committee appointed herein, to the Bank's liens and/or claims must be asserted on or before June 1, 2005, by the filing of an adversary proceeding challenging the Bank's liens and/or claims. In the event the Committee files an adversary proceeding, it may seek the return of funds paid pursuant to the terms of this Order. If no challenge is made on or before June 1, 2005, or such further time as the Debtor, the Bank and the Committee shall agree to in writing, or such further time as the Court allows after a hearing, and for cause, the validity and enforceability of the Bank's liens and/or claims shall be established and not subject to challenge, attack or subordination.

(Docket No. 89, Case No. 05-80340-G3-11, at p. 7).

On May 31, 2005, the Committee filed the complaint in the instant adversary proceeding. In the complaint, the Committee asserts that the $600,000 term loan made by Defendant was made to Miller, individually, rather than to Tile Outlet, in order to finance Miller's purchase of the shares of Tile Outlet that he did not own at that time, from Tile Outlet's other shareholder, David Tinsley. The Committee asserts that Tile

4

Outlet guaranteed Defendant's loan to Miller, without receiving reasonably equivalent value for execution of the guarantee. The Committee also seeks disallowance of Defendant's claim pursuant to Section 502(d) of the Bankruptcy Code, on grounds it is the recipient of a fraudulent transfer disallowable pursuant to Section 548 of the Bankruptcy Code.

In the instant motion, Defendant seeks dismissal of the instant adversary proceeding. First, Defendant asserts that the Committee lacks standing to bring the fraudulent transfer cause of action, because only a trustee (including the Chapter 11 debtor in possession) may bring a cause of action under Section 548 of the Bankruptcy Code for avoidance of a fraudulent transfer. Second, Defendant asserts that the instant adversary proceeding should be dismissed, because the complaint fails to plead fraud with particularity. Finally, Defendant asserts that the count seeking disallowance of Defendant's claim is premature, because the provisions of Section 502(d) of the Bankruptcy Code are not applicable until a party has obtained a judgment for avoidance of a fraudulent transfer.

In response, the Committee first contends that the cash collateral order gave it authority to sue, or alternatively that such authority may be granted to the Committee nunc pro tunc. Second, the Committee also contends that the Bank is judicially estopped from contesting the Committee's authority to sue, by

5

virtue of its signing the agreed cash collateral order. Third, the Committee contends that it has standing for the reason that the instant adversary proceeding is essentially a claim objection.

Conclusions of Law

In <u>Louisiana World Exposition v. Federal Ins. Co.</u>, 858 F.2d 233 (5th Cir. 1988), the Fifth Circuit held that a Committee may pursue a cause of action owned by the bankruptcy estate if a colorable claim exists, the debtor in possession unjustifiably refuses to pursue the claim, and the Committee seeks and obtains leave from the bankruptcy court to pursue the claim.

As a threshold question, the court must consider whether the rule in <u>Louisiana World</u> remains good law, after the Supreme Court's opinion in <u>Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.</u>, 530 U.S. 1, 120 S. Ct. 1942, 147 L.Ed.2d 1 (2000). In <u>Hartford Underwriters</u>, the Supreme Court held that the effect of Section 506(c) of the Bankruptcy Code, which provides that in certain circumstances the "trustee may" surcharge collateral, is personal to the trustee, and may not be exercised by other parties.[2]

Section 548 of the Bankruptcy Code provides that the "trustee may" avoid various types of fraudulent transfers. 11 U.S.C. § 548(a).

---

[2] The court notes that "trustee" includes debtor in possession in a Chapter 11 case. See 11 U.S.C. § 1107.

6

There is no controlling case law directly on point with respect to the question of whether <u>Hartford Underwriters</u> applies with respect to avoidance actions under Section 548 of the Bankruptcy Code. However, in <u>In re Stangel</u>, 219 F.3d 498 (5th Cir. 2000) the Fifth Circuit extended the rationale of <u>Hartford Underwriters</u> to a Chapter 13 debtor's action for avoidance of a statutory lien under Section 545. Based on the Fifth Circuit's apparent intent to extend the rationale to sections of the Bankruptcy Code granting authority to "the trustee," the court concludes that the rationale of <u>Hartford Underwriters</u> applies to avoidance actions under Section 548 of the Bankruptcy Code.

However, the determination that <u>Hartford Underwriters</u> applies does not end the inquiry as to whether <u>Louisiana World</u> remains good law. In <u>Hartford Underwriters</u>, the Supreme Court expressly declined to decide the question of whether courts may allow creditors' committees or other parties a derivative right to bring avoidance actions when the trustee refuses to do so. <u>Hartford Underwriters</u>, 120 S. Ct., at p. 1951, n. 5.

In <u>Official Comm. of Unsecured Creditors of Cybergenics, Inc. v. Chinery (In re Cybergenics, Inc.)</u>, 330 F.3d 548 (3d Cir. 2003), the Third Circuit held that <u>Hartford Underwriters</u> did not prevent the court from granting derivative standing to a committee to sue. That result was followed in <u>Matter of iPCS, Inc.</u>, 297 B.R. 283 (Bankr. N.D. Ga. 2003).

The Cybergenics opinion is nearly directly on point. Although it deals with avoidance under Section 544 of the Bankruptcy Code, rather than Section 548, it concerns whether the bankruptcy court could permit a committee to bring a cause of action on behalf of the estate. The court concludes that Hartford Underwriters does not prevent the court from granting derivative standing to a committee to sue. The court concludes that Louisiana World remains good law with respect to the the determination of whether a creditors' committee may bring a cause of action on behalf of the bankruptcy estate.

With respect to application of the rule in Louisiana World, the Committee argues that the court may retroactively grant authority to the Committee to pursue the underlying causes of action against Defendant. However, the Committee has not sought or obtained such authority, even while the instant adversary proceeding and motion to dismiss have been pending.[3] An insufficient showing has been made at this time as to whether the underlying cause of action for fraud is colorable, whether the debtor has refused to bring such a cause of action, or whether such refusal, if any, is unjustifiable. The court

---

[3] The Committee's assertion that such authority was sought in the process of negotiation or obtained in the cash collateral order is without merit. Committees play a salutary role in investigation of prepetition conduct by debtors in possession and their lenders. However, the seeking or obtaining of authority to prosecute a cause of action on behalf of the estate should be done explicitly, and certainly cannot be established by a purported reservation of rights.

concludes that, at this time, the fraud count of the complaint should be dismissed based on the Committee's lack of standing, without prejudice to the Committee's seeking and obtaining authority to bring a cause of action on behalf of the bankruptcy estate.

Because the court is dismissing the fraud count on other grounds, the court need not reach the question of whether the complaint pleads fraud with sufficient particularity.

On the question of whether assertion of the claim disallowance provision of Section 502(d) is premature, Defendant cites Holloway v. IRS (In re Odom Antennas, Inc.), 340 F.3d 705 (8th Cir. 2003) and In re Davis, 889 F.2d 658 (5th Cir. 1989) for the proposition that the provisions of Section 502(d) are not applicable until and unless a party has obtained a judgment with respect to the avoidable transfer.  In response the Committee argues that it may object to Defendant's claim under Section 502(a).  However, the complaint does not object to the claim under Section 502(a); instead, it seeks disallowance of the claim pursuant to Section 502(d).

Davis is controlling, and stands for the proposition that Section 502(d) is designed to be triggered after a creditor has been afforded a reasonable time in which to turn over amounts adjudicated to belong to the bankruptcy estate.  The court concludes that consideration of the Committee's argument under

Section 502(d) of the Bankruptcy Code is premature at this time.

Based on the foregoing, a separate Judgment will be entered dismissing the above captioned adversary proceeding, without prejudice.

Signed at Houston, Texas on October 19, 2005.

*/s/ Letitia Z. Clark*

HONORABLE LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE